UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

JAMIE LABRANCHE                                              CIVIL ACTION NO.

VERSUS                                                       21-146-SDD-EWD

THE LOUISIANA DEPARTMENT
OF JUSTICE

## NOTICE AND ORDER

Before the Court is the Petition for Writ of Mandamus Pursuant to Public Records Laws ("Complaint")[1] and Motion to File Notice of Evidence ("Motion"),[2] filed *pro se* by Jamie Labranche ("Plaintiff").[3] In the Complaint, Plaintiff seeks a writ of mandamus directing Louisiana Attorney General Jeff Landry ("Landry") of the Louisiana Department of Justice ("DOJ") to produce certain records requested by Plaintiff pursuant to Louisiana's Public Records Act ("PRA"), La. R.S. 44:33, *et seq.*;[4] Article XII, Section 3 of the Louisiana Constitution of 1974;[5] unspecified "Federal Accountability (GAO) Law;" and "other applicable law cited herein."[6] Because it is not clear that this Court has federal subject matter jurisdiction over the claims asserted for the reasons explained more fully below, Plaintiff shall be ordered to filed an amended complaint in accordance with this Order. Alternatively, Plaintiff may voluntarily dismiss the case.

---

[1] R. Doc. 1.

[2] R. Doc. 5.

[3] Plaintiff sought to proceed *in forma pauperis* ("IFP"), but his application was initially denied because his Short Form Application did not contain sufficient information for the Court to determine whether Plaintiff could pay the filing fee. Plaintiff was ordered to either submit the Long Form Application or pay the Court's $402 filing fee. R. Docs. 2-3. Plaintiff elected to pay the filing fee.

[4] The Complaint is written entirely in capital letters but citations to Plaintiff's quotations will be in normal sentence case for the sake of readability. La. R.S. 44:33 provides: "A. Providing access to public records is a responsibility and duty of the appointive or elective office of a custodian and his employees. B. (1) Except as otherwise provided in this Chapter or as otherwise specifically provided by law, and in accordance with the provisions of this Chapter, any person of the age of majority may inspect, copy, or reproduce any public record. (2) Except as otherwise provided in this Chapter or as otherwise specifically provided by law, and in accordance with the provisions of this Chapter, any person may obtain a copy or reproduction of any public record. (3) The burden of proving that a public record is not subject to inspection, copying, or reproduction shall rest with the custodian."

[5] "No person shall be denied the right to observe the deliberations of public bodies and examine public documents, except in cases established by law."

[6] R. Doc. 1, pp. 1-2, 4-5.

Certified Mail - Return Receipt Requested
7018 0360 0001 1615 7756

## I.  Background

Plaintiff seeks production of "public records in state possession, accounting for every dollar of 67 million plus dollars received from federal government" and "copys [sic] of all transactions related to this 67 million and any money you may be keeping in escrow.  Down to the nearest dollar."[7]  Despite this cryptic description of the records requested, news articles attached to Plaintiff's Complaint shed further light on the documents that Plaintiff is requesting.  According to the news articles, in February 9, 2012, the federal government and forty-nine state attorneys general reached a $25 billion agreement with the nation's five largest mortgage servicers "to address mortgage loan servicing and foreclosure abuses" (the "settlement").  Reportedly, "The agreement provides substantial financial relief to homeowners and establishes significant new homeowner protections for the future" and "requires [mortgage services] to commit more than $20 billion towards financial relief for consumers."[8]  The news article reports that the terms of the settlement required $20 billion in financial relief for borrowers, and also required the servicers to pay $5 billion in cash to the federal and state governments, $1.5 billion of which was to be used to establish a borrower payment fund to provide cash payments to borrowers whose homes were sold or taken in foreclosure between January 1, 2008 and December 31, 2011.[9]  Other articles attached to Plaintiff's Motion reference that California received $410 million in the settlement, and Texas received $124 million in the settlement; however, legal and/or legislative action was ultimately attempted and/or taken against both states for misappropriation of the funds, as it was alleged that the states failed to disburse the money to homeowners, but rather deposited the money into their respective state general funds.[10]  Construing Plaintiff's claims, and the substance of his PRA

---

[7] R. Doc. 1, pp. 1-2, 5.
[8] R. Doc. 1-1, p. 1.
[9] R. Doc. 1-1, p. 2.
[10] R. Doc. 5-1.  Plaintiff filed only the first pages of these articles; however, the entire articles were found by the Court online.

2

requests, against this backdrop, it appears that Plaintiff seeks a writ compelling Landry to produce

the documents that reflect an accounting of Louisiana's portion of the settlement, which Plaintiff

contends amounted to more than $67 million dollars, including an accounting of where the funds

were directed and where they are currently are held.   While Plaintiff asserts that the settlement

proceeds were "designed to help people like me," Plaintiff has not specifically raised a claim to

the funds in his Complaint.[11]

The record reflects that Plaintiff submitted two PRA requests, one on January 8, 2019 and

another on February 24, 2021.  Both times, Plaintiff was advised in response that there were no

documents responsive to his requests.[12]  In his Complaint, Plaintiff additionally claims that he was

denied these records in 2014 by former Louisiana Attorney General James D. Caldwell.[13]  Plaintiff

contends that he needs the requested records to "close [his] civil case," which is a foreclosure case

that Plaintiff has been litigating in the Fortieth Judicial District Court for the last fourteen years.

Plaintiff also makes vague and unclear allegations that suggest that former Attorney General

representatives allegedly colluded and/or used evidence and information obtained from that office

against Plaintiff in order to defeat his claims to the funds and/or against him in his foreclosure

case.[14]   In support of his PRA request, Plaintiff argues that "the publics (sic) right of access to

public records is a fundamental right guaranteed by the constitution," citing Louisiana state court

jurisprudence,[15] and the failure of Landry to produce the records "will violate [Plaintiff's] civil

rights life, liberty and * property lost."[16]

---

[11] R. Doc. 1, p. 2; R. Doc. 1-1, pp. 7-8.  Plaintiff avers that he "did everything Louisiana State AG ask for but yet no help of the 67 million they received." R. Doc. 1, p. 2.  *See also* R. Doc. 5, pp. 1-2.

[12] R. Doc. 1, p. 3 and R. Doc. 1-1, pp. 7-8.

[13] R. Doc. 1, p. 3 and R. Doc. 1-1, p. 6.

[14] R. Doc. 1, pp. 2-3.  Plaintiff alleges that he met with the Federal Bureau of Investigations regarding these claims. R. Doc. 1, p. 2 and R. Doc. 1-1, p. 5.

[15] R. Doc. 1, p. 4, *citing Title Research Corp. v. Rausch*, 450 So2d 933, 936 (La. 1984) ("The right of the public to have access to the public records is a fundamental right, and is guaranteed by the constitution. La. Const. art. 12, § 3.").

[16] R. Doc. 1, pp. 3-5.

Significant for the purpose of the instant Order, Plaintiff argues the following as grounds for issuance of the writ by this Court: "clearly a writ of mandamus may be directed to a public officer to compel the performance of a ministerial duty required by law," specifically relying on La. C.C.P. art. 3863, which provides that "A writ of mandamus may be directed to a public officer to compel the performance of a ministerial duty required by law, or to a former officer or his heirs to compel the delivery of the papers and effects of the office to his successor."[17]  Furthermore, Plaintiff contends, several times, that this Court allegedly has original jurisdiction over this matter because the underlying funds are comprised of "federal government money with GAO accountability."[18] Plaintiff also seeks monetary damages, sanctions, and costs for Landry's violation of the PRA, and "for F.B.I. to open new case on foul play surrounding the case."[19]

## II. Law and Analysis

Unlike state district courts, which are courts of general jurisdiction and may therefore hear all types of claims, federal courts may only entertain those cases over which there is subject matter jurisdiction.  Federal subject matter jurisdiction may generally be established in two ways. This Court has subject matter jurisdiction over "civil actions arising under the Constitution, laws, or treatises of the United States,"[20] and over civil actions where the amount in controversy exceeds $75,000.00 exclusive of interest and costs and the parties are completely diverse (*i.e.*, all plaintiffs are citizens of a different state than all defendants).[21]  The burden of establishing federal subject

---

[17] R. Doc. 1, pp. 4-5.
[18] R. Doc. 1, pp. 2, 4-5.
[19] R. Doc. 1, pp. 1, 5.
[20] 28 U.S.C. § 1331.
[21] 28 U.S.C. § 1332.  Aside from 28 U.S.C. § 1331 and § 1332, which are the most common bases for federal subject matter jurisdiction, there are also other statutory grants of original jurisdiction that apply to specific types of cases.

matter jurisdiction is on the party asserting it (here, Plaintiff).[22] A court may raise on its own at any time the issue of whether subject matter jurisdiction exists.[23]

With regard to diversity jurisdiction pursuant to 28 U.S.C. § 1332, Plaintiff has not alleged his own citizenship,[24] or that of the DOJ, or the requisite amount in controversy of $75,000. However, even if Plaintiff had adequately alleged his own citizenship to be that of Louisiana, he cannot allege complete diversity against the DOJ, the named defendant, because a state agency is not a citizen for federal diversity of citizenship purposes.[25] Therefore, it does not appear that Plaintiff has, or can, adequately allege jurisdiction based on diversity of citizenship.

With regard to federal question jurisdiction pursuant to 28 U.S.C. § 1331, Plaintiff must state a cause of action arising under federal law, which Plaintiff's Complaint currently fails to do. Plaintiff's underlying PRA request is asserted pursuant to Louisiana statutory and constitutional law, *i.e.*, La. R.S. 44:33 and Article XII, Section 3 of the Louisiana Constitution, and his grounds for issuance of the writ are likewise premised upon Louisiana law, La. C.C.P. art. 3863.  At most, Plaintiff contends that the settlement money is "federal government money," but that allegation by

---

[22] *Willoughby v. United States ex rel. Dep't of the Army*, 730 F.3d 476, 479 (5th Cir. 2013).

[23] *McDonal v. Abbott Laboratories*, 408 F.3d 177, 182, n. 5 (5th Cir. 2005).  *See Cephus v. Texas Health & Hum. Servs. Comm'n,* 146 F. Supp. 3d 818, 825 (S.D. Tex. Nov. 19, 2015) ("A court may *sua sponte* raise a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction at any time. *Westland Oil Development Corp. v. Summit Transp. Co.*, 481 F.Supp. 15 (S.D.Tex.1979), *aff'd*, 614 F.2d 768 (1980). Fed. Rule of Civil Procedure 12(h)(3) states, "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.". *See Kidd v. Southwest Airlines Co.*, 891 F.2d 540, 545 (5th Cir.1990)("[F]ederal courts must address jurisdictional questions *sua sponte* when the parties' briefs do not bring the issue to the court's attention.")").

[24] "For diversity purposes, citizenship means domicile; mere residence in the State is not sufficient." *Mas v. Perry*, 489 F.2d 1396, 1399 (5th Cir. 1974).  Accordingly, to properly plead Plaintiff's citizenship, Plaintiff must plead Plaintiff's domicile.

[25] *See D & J Invs. of Cenla LLC v. Baker Hughes A GE Co., LLC,* No. 1:20-01174, 2020 WL 8225685, at *3 (W.D. La. Nov. 18, 2020) ("Federal jurisprudence is clear that "a state is not a 'citizen' for purposes of diversity jurisdiction." *Tradigrain, Inc. v. Mississippi State Port Auth.*, 701 F.2d 1131, 1132 (5th Cir. 1983). It follows that in an action where a state is a party, § 1332 generally does not provide a basis for subject matter jurisdiction. *See Allen v. C & H Distributors, L.L.C.*, 813 F.3d 566, 571 (5th Cir. 2015) ("Ordinarily '[i]n an action where a state is a party, there can be no federal jurisdiction on the basis of diversity of citizenship because a state is not a citizen for purposes of diversity jurisdiction.' "). **Likewise, an entity that is "merely an alter ego of the state," such as the DEQ, is not considered a citizen under § 1332.** *See Watkins v. Louisiana Dep't of Transp. & Dev.*, No. 09-1743, 2010 WL 744911, at *2 (W.D. La. Feb. 26, 2010) (holding that the Louisiana Department of Transportation and Development is "equivalent to the State of Louisiana for purposes of determining diversity of citizenship.").") (emphasis added).

itself does not allege a federal cause of action, and Plaintiff has not provided any legal authority or argument for why it otherwise would.[26]

Plaintiff also relies on unspecified "Federal accountability (GAO) laws" and unspecified civil rights laws in support of jurisdiction, but Plaintiff fails to point to any particularized federal accountability law or civil rights law that supports jurisdiction in this case. Even construing Plaintiff's claims liberally in light of his *pro se* status, the Court is independently unaware of any federal accountability law applicable to this case that provides subject matter jurisdiction over the claims asserted.

Regarding other potentially applicable legal grounds, the Court does not have subject matter jurisdiction pursuant to 28 U.S.C. §1361, which provides for original jurisdiction "of any action in the nature of mandamus to compel **an officer or employee of the United States** or any agency thereof to perform a duty owed to the plaintiff." This statute permits issuance of a writ against an officer or employee of the United States, which clearly does not apply to state actor Landry or the DOJ.[27] The All Writs Act, 28 U.S.C. § 1651, permits the district courts to issue writs in aid of their jurisdiction and in certain circumstances upon the required showing, but only when the request for the writ is supported by an independent basis for jurisdiction, which does not appear to exist for the reasons set forth above.[28]

---

[26] It is also not entirely clear that the underlying settlement funds allocated to Louisiana are in fact comprised of federal monies.

[27] *See Church of Scientology of Georgia, Inc. v. City of Sandy Springs, Ga.,* 843 F. Supp. 2d 1328, 1380 (N.D. Ga. 2012) ("Plaintiff's Complaint also includes a claim for mandamus requesting that the Court order the City to apply the "church parking standard" to Plaintiff's property (Count XIII). Federal district courts do not have the authority to issue writs of mandamus to direct state officials in the performance of their duties. *See* 28 U.S.C. § 1361; *Moye v. Clerk, DeKalb Superior Court,* 474 F.2d 1275, 1276 (5th Cir.1973); *Noe v. Metropolitan Atlanta Rapid Transit Authority,* 485 F.Supp. 501, 504 (N.D.Ga. 1980), *aff'd* 644 F.2d 434 (5th Cir.1981).")

[28] *See Brittingham v. U.S. Comm'r,* 451 F.2d 315, 317 (5th Cir. 1971) ("Plaintiff brought this action under 28 U.S.C. § 1651, which provides, in part, as follows: (a) The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law. It is settled that this section, known as the All Writs Act, by itself, creates no jurisdiction in the district courts. It empowers them only to issue writs in aid of jurisdiction previously acquired on some other independent ground. *McIntire v. Wood*, 7 Cranch 504, 3 L.Ed. 420 (1813); *Rosenbaum v. Bauer,* 120 U.S. 450, 7 S.Ct. 633, 30 L.Ed. 743 (1887); *Covington & C. Bridge Co. v. Hager,* 203 U.S. 109, 27 S.Ct. 24, 51 L.Ed. 111 (1906); *Hurt v. Cotton States*

The articles attached to Plaintiff's Motion refer to legal actions decided by the state courts

in California and Texas.  The legal basis for the California litigation is unclear, but the July 2019

article reports that the litigation has reached finality, as the California Supreme Court is reported

to have declined review of the ruling of the state appellate court holding that the settlement money

must be repaid.[29]   The November 2015 article regarding the Texas litigation does not indicate the

forum for the litigation, or the specific legal basis for the lawsuit, aside from referring to a "federal

whistleblower complaint" that "accuses the state of Texas of the "illegal diversion" of the state's

share of the settlement funds."[30]  It is also not clear if that litigation was permitted to proceed and

if so, whether it has reached finality.  As it stands, Plaintiff has not asserted a cause of action for

any type of federal whistleblower action, including one under the False Claims Act, 31 U.S.C. §§

3729 – 3733, nor has he satisfied the substantive requirements of the FCA.[31]  Significantly, even

if Plaintiff had, the State is not subject to suit under the FCA, and/or such a claim would be barred

by the State's Eleventh Amendment sovereign immunity,[32] particularly because there has been no

---

*Fertilizer Co.*, 159 F.2d 52 (5th Cir. 1947), *cert. den.*, 331 U.S. 828, 67 S.Ct. 1351, 91 L.Ed. 1843; *Haggard v. Tennessee*, 421 F.2d 1384 (6th Cir. 1970).")

[29] R. Doc. 5-1 and https://www.wfaa.com/article/news/local/investigates/texas-mortgage-settlement-millions-misspent-critics-say/287-23762448.

[30] R. Doc. 5-1 and https://www.latimes.com/california/story/2019-07-19/california-331-million-mortgage-settlement-state-budget-lawsuit.

[31] 31 U.S.C. § 3730 provides, in pertinent part:  "(b) Actions by private persons.--(1) A person may bring a civil action for a violation of section 3729 for the person and for the United States Government. The action shall be brought in the name of the Government. The action may be dismissed only if the court and the Attorney General give written consent to the dismissal and their reasons for consenting.  (2) A copy of the complaint and written disclosure of substantially all material evidence and information the person possesses shall be served on the Government pursuant to Rule 4(d)(4) of the Federal Rules of Civil Procedure.  The complaint shall be filed in camera, shall remain under seal for at least 60 days, and shall not be served on the defendant until the court so orders. The Government may elect to intervene and proceed with the action within 60 days after it receives both the complaint and the material evidence and information."

[32] *Ogrey v. Texas,* 207 F. App'x 383, 386 (5th Cir. 2006) ("Nonetheless, the district court cannot sanction a party by exercising jurisdiction where it is lacking. Considering that sovereign immunity is similar to a subject matter jurisdiction bar, the district court should have considered the sovereign immunity issue and reached a conclusion, even if technically improperly presented. The court could have considered the issue had it gone *entirely unraised. See Perez v. Region 20 Educ. Serv. Ctr.,* 307 F.3d 318, 333 n. 8 (5th Cir.2002) ("[W]e may consider this [sovereign immunity] issue *sua sponte* because it bears on this court's subject matter jurisdiction."). In either case we can consider it here,

intervention herein by the federal government.[33] Finally, Plaintiff's request for an investigation by the FBI is improperly raised here.[34] Plaintiff must seek relief directly from the FBI or the U.S. Attorney's office relating to allegations of criminal conduct. In any case, Plaintiff's Complaint does not currently assert a federal civil claim giving rise to federal subject matter jurisdiction under 28 U.S.C. § 1331.

In light of Plaintiff's *pro se* status, Plaintiff shall be given the opportunity to amend his Complaint pursuant to Fed. R. Civ. P. 15 to attempt to assert a basis for subject matter jurisdiction. Plaintiff shall be given thirty days to file a comprehensive, amended Complaint, that sets forth all of Plaintiff's allegations, as revised, supplemented, and/or amended, and that fully complies with the requirements of the Federal Rules of Civil Procedure and the Local Rules of this Court regarding the form and content of federal pleadings,[35] which adequately alleges a cause of action arising under federal law. While the current Motion to file evidence shall be granted because the articles submitted therewith were considered, no further extrinsic evidence shall be filed with or following the Amended Complaint as the docket is not a repository for evidence at this juncture of the case.

---

as "[t]he Eleventh Amendment defense sufficiently partakes of the nature of a jurisdictional bar so that it need not be raised in the trial court." *Edelman v. Jordan,* 415 U.S. 651, 678, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974).").

[33] *See United States v. Texas Tech Univ.,* 171 F.3d 279, 294 (5th Cir. 1999) ("In sum, we hold that when the United States has not actively intervened in the action, the Eleventh Amendment bars qui tam plaintiffs from instituting suits against the sovereign states in federal court."); *U.S. ex rel. King v. Univ. of Texas Health Sci. Ctr.-Houston,* 544 F. App'x 490, 498 (5th Cir. 2013) (holding that "[University of Texas Health Science Center–Houston] is an arm of the state and that *Stevens* applies. UTHSCH is not a "person" under the FCA, and is not subject to qui tam liability."); and *Vermont Agency of Nat. Res. v. U.S. ex rel. Stevens,* 529 U.S. 765, 787–88, 120 S. Ct. 1858, 1871, 146 L. Ed. 2d 836 (2000) ("We hold that a private individual has standing to bring suit in federal court on behalf of the United States under the False Claims Act, 31 U.S.C. §§ 3729–3733, but that the False Claims Act does not subject a State (or state agency) to liability in such actions." *Id.* at 787.

[34] Further, a plaintiff does not generally have a private cause of action under a federal criminal statute. *Gill v. State of Texas*, 153 Fed.Appx. 261, 262-63 (5th Cir. 2005)("[D]ecisions whether to prosecute or file criminal charges are generally within the prosecutor's discretion, and, as a private citizen, Gill has no standing to institute a federal criminal prosecution and no power to enforce a criminal statute …. Therefore, the district court did not abuse its discretion when it dismissed these claims as legally frivolous.") (citations omitted).

[35] *See* Fed. R. Civ. P. 8, 10-11, which are available online and likely at public libraries, and Local Rules 5, 7, 10, and 11, which may be found on the Court's website at https://www.lamd.uscourts.gov/court-info/local-rules-and-orders ("Middle District of Louisiana--Local Rules").

In lieu of amending, Plaintiff may voluntarily dismiss his Complaint by filing a Notice of Voluntary Dismissal pursuant to Fed. R. Civ. P. 41(a)(1)(A), which should simply state that Plaintiff desires to voluntarily dismiss his Complaint, and which would result in the dismissal of Plaintiff's Complaint without prejudice.[36]

Accordingly,

**IT IS ORDERED** that the Motion to File Notice of Evidence ("Motion"),[37] filed by Plaintiff Jamie Labranche is **GRANTED**. The Clerk of Court is directed to docket the additional evidence at R. Doc. 5-1. However, no further extrinsic evidence shall be filed with or following the Amended Complaint described below.

**IT IS FURTHER ORDERED** that in light of Plaintiff's *pro se* status, Plaintiff shall be given the opportunity to amend his Complaint pursuant to Fed. R. Civ. P. 15 to attempt to assert a basis for federal subject matter jurisdiction. Plaintiff is given thirty days, **or until May 3, 2021**, to file a comprehensive, amended Complaint, that sets forth all of Plaintiff's allegations, as revised, supplemented, and/or amended, and that fully complies with the requirements of the Federal Rules of Civil Procedure and the Local Rules of this Court regarding the form and content of federal pleadings, which adequately alleges a cause of action arising under federal law. Alternatively, Plaintiff may voluntarily dismiss his Complaint by filing a Notice of Voluntary Dismissal pursuant to Fed. R. Civ. P. 41(a)(1)(A), as explained above.

**IT IS FURTHER ORDERED** that the Clerk of Court shall serve this Ruling and Order on Plaintiff Jamie LaBranche, via regular and certified mail, return receipt requested at the address listed on PACER.

---

[36] A dismissal without prejudice may permit Plaintiff to pursue his claims in another venue, including the Louisiana state courts of general jurisdiction, although no opinion is given as to the legitimacy or viability of Plaintiff's claims in such other courts.

[37] R. Doc. 5.

**Failure to respond as ordered may result in a recommendation of dismissal of Plaintiff's claims in this matter without further notice.**

Signed in Baton Rouge, Louisiana, on March 31, 2021.

_____
**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**